UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

   -v-                                                                   No.  10-CR-905-LTS-36

ARIEL PENA,

        Defendant.

-------------------------------------------------------x

## ORDER

Mr. Pena has moved, pro se, for early termination of his supervised release term.  (Docket entry no. 2451 (the "Motion").)  The Probation Office supports Mr. Pena's request, but the Government opposes the Motion.  (Docket entry no. 2454 ("Gov. Mem.").)  The Court has reviewed the parties' submissions carefully and, for the following reasons, Mr. Pena's Motion is granted.[1]

## BACKGROUND

In 2011, Mr. Pena pleaded guilty to conspiring to distribute and possess with intent to distribute 1,000 kilograms or more of mixtures and substances containing a detectable amount of marijuana in violation of 21 U.S.C. sections 841(b)(1)(A) and 846. (Gov. Mem. at 1-2.)  At his sentencing in 2013, the Court determined that Mr. Pena was a career offender[2] under the Sentencing Guidelines, and that his Guidelines range was 262-327 months of imprisonment.  (Id. at 2.)  The Court ultimately sentenced Mr. Pena to 192 months

---

[1]     The Court also grants the Government's request to file its exhibit, which contains Mr. Pena's Board of Prisons ("BOP") disciplinary records, under seal.

[2]     Between 1995 and 2009, beginning when Mr. Pena was 16 years old, he sustained 11 criminal convictions for activity related to controlled substances.  (Gov. Mem. at 1.)  Of those convictions, at least two were related to violations of parole.  (Id.)

of incarceration—a below-Guidelines sentence—followed by an eight-year period of supervised release. (Id.) Mr. Pena completed his custodial sentence and commenced his term of supervised release on June 28, 2022. (Id.) To date, Mr. Pena has served more than two and one-half years of supervised release.

## Discussion

Section 3583 provides that the Court may, after considering the factors set forth in Section 3553(a) of Title 18 of the United States Code, "terminate a term of supervised release . . . after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C.A. § 3583(e)(1) (Westlaw through P.L. 118-158). The Guide to Judiciary Policy likewise recognizes that the Court may terminate "terms of supervised release . . . in felony cases after the expiration of one year of supervision, if the court is satisfied that such action is warranted by the conduct of the person under supervision and is in the interest of justice." Guide to Judiciary Policy, Volume 8E, Chapter 3, § 360.20(a)(2).

The Second Circuit has held that "changed circumstances" such as "exceptionally good behavior by the defendant" may "[o]ccasionally" warrant the early termination of supervised release. United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997).[3] However, "[a] defendant's faithful compliance with the terms of his supervision does not, by

---

[3]    Mr. Pena characterizes Lussier as "discredited authority." (Docket entry no. 2456 ("Reply") at 3.) "Lussier, however, has not been 'rejected.'" United States v. Weiss, No. 21-CR-00457-PMH, 2022 WL 3214914, at *3 (S.D.N.Y. Aug. 9, 2022). Rather, the Second Circuit has clarified that "the plain language of Lussier . . . does not require new or changed circumstances relating to the defendant in order to modify conditions of release, but simply recognizes that changed circumstances may in some instances justify a modification." United States v. Parisi, 821 F.3d 343, 347 (2d Cir. 2016) (emphasis in original).

itself, entitle him to modification or termination of his term of supervised release." United States v. Bouchareb, 76 F. Supp. 3d 478, 479 (S.D.N.Y. 2014) (quoting United States v. Flores, No. 99-CR-1110-RWS, 2010 WL 2573385, at *1 (S.D.N.Y. June 28, 2010)). "Rather, full compliance with the terms of supervised release is what is expected of the defendant and does not warrant early termination." United States v. Olivieri, 72 F. Supp. 3d 401, 403 (S.D.N.Y. 2014) (citation omitted).

Mr. Pena argues that the interests of justice support his request for early termination. (Motion at 5.) He represents that he served "his 192-month custodial sentence as a model inmate" and "took multiple educational programs offered to him in prison, including its residential drug rehabilitation program ('RDAP'), the Dental Apprentice Program, Culinary Arts Program, among others." (Id. at 2-3.) After Mr. Pena began his term of supervised release, "he immediately secured employment at the Auto Tech group, which is a car dealership, for which he attends auctions." (Id. at 3.) While Mr. Pena describes his employment as "steady," he argues that his ability to fully perform his job is impeded by his continued supervision, stating that he "cannot travel outside this judicial district, such as Brooklyn, to attend auctions." (Id. at 5.) He does not, however, disclose whether he has requested permission or a modification of his supervision conditions to address that problem. Mr. Pena also represents that he "maintains a stable family life, with two children" and has not violated any conditions of his supervised release. (Id. at 3.)

The Probation Office supports his request for early termination of his supervised release, confirming that his full-time employment with Auto Tech has been verified and providing the Court with further detail regarding his reentry. While Mr. Pena was completing his custodial sentence in a halfway house, he participated successfully in a

Transitional Drug Abuse Treatment program and, after he was released to supervision and referred for further outpatient services, the provider determined that he did not need further substance abuse or mental health services. He has since refrained from substance abuse – all of Mr. Pena's drug tests have been negative – and Probation has found no evidence of continued criminal activity. (Gov. Mem. at 4.) In addition to verifying his compliance with the conditions of supervision, and after conferring with the Government as directed by the Court, the Probation Office proffered its assessment that Mr. Pena "appears dedicated to changing his life and continuing to be a productive individual." The Government, however, argues that Mr. Pena has "failed to make out a compelling case for early termination of supervised release" because "[t]he Section 3553(a) factors that supported the eight-year term of supervised release at the time of sentencing continue to support that term today." (Id. at 5.) The Government's argument relies heavily on (1) the fact that Mr. Pena "had parole violation issues way back when [he was] younger" and (2) its position that "the fact that the defendant has done what has been asked of him is not grounds for terminating his supervision." (Id. at 5-6.)

        The Court, having considered the factors set forth in both 18 U.S.C. section 3553(a), and the Guide to Judiciary Policy, Volume 8E, Chapter 3, section 360.20(a), is "satisfied that the termination is warranted and is in the interest of justice." United States v. Nelson, No. 17-CR-424-PKC, 2022 WL 125814, at *1 (E.D.N.Y. Jan. 13, 2022). Mr. Pena has complied with the conditions of his supervised release and has demonstrated "exceptionally good behavior" for the last two and a half years, as well as during his long period of incarceration. See Lussier, 104 F.3d at 36. He has persuaded the Probation Office that he is committed to maintaining a changed and lawful life, and the provider of supportive

substance abuse and health services has determined that Mr. Pena is no longer in need of such services. As the Court explained at sentencing, among its reasons for imposition of an unusually long period of supervision were providing the Court with the opportunity to assess Mr. Pena's demonstration of his capacity for and willingness to undertake change, and ensuring that he would have access to supportive services that the Court believed he would "likely" need. His conduct during his custodial term and over the years of supervision that he has served has demonstrated both his capacity for and achievement of change, and the service provider has determined – contrary to the Court's expectation at the time of sentencing – that he does not need the supportive services that the Court had been concerned should be in place. Additionally, "the Court places great weight on the fact that the Probation [Office], which is in the best position to assess Defendant's adjustment to supervision to date, his potential for recidivism, and the need (or lack thereof) for continued supervision, . . . recommends early termination." Nelson, 2022 WL 125814, at *1.

        For these reasons, the Court concludes that early termination of Mr. Pena's period of supervision is warranted and in the interests of justice, and his motion for early termination of supervision is granted, effective February 12, 2025. Because the Court is modifying the terms of Mr. Pena's supervised release in his favor, the Court is not required to hold a hearing. Fed. R. Crim. P. 32.1(c)(2)(B) ("A hearing is not required if . . . the relief sought is favorable to the person and does not extend the term of probation or of supervised release")); see also 18 U.S.C. § 3583(e)(1) (supervised release may be terminated "pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation").

CONCLUSION

This Order resolves docket entry no. 2451. The Clerk of Court is respectfully directed to mail a copy of this Order to Mr. Pena at the address below.

SO ORDERED.

Dated: New York, New York
February 7, 2025

           /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

Mail to:

Ariel Pena
539 W. 106th St., Apt. 3A
New York, NY 10032